**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

MALLORY PATTERSON, *et al.*,    )
                                     )
       Plaintiffs,           )
                                     )
v.                                 )
                                     )    Civil Case No.: 3:23-cv-757
VIRGINIA DEPARTMENT OF      )
CORRECTIONS, *et al.*,         )
                                     )
       Defendants.       )

**DEFENDANTS VIRGINIA DEPARTMENT OF CORRECTIONS AND
CHADWICK DOTSON'S BRIEF IN SUPPORT OF
<u>THEIR MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

    I.      VDOC's Standard Operating Procedures ............................................................ 3

    II.     Plaintiffs' Body Scans ....................................................................................... 3

        A.     Mallory Patterson ........................................................................................ 3

        B.     Emily Comer ............................................................................................... 4

        C.     Carla McDowney ........................................................................................ 5

    III.    The Complaint .................................................................................................... 6

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ........................................................................................................................ 7

    I.      Plaintiffs' Title VII Disparate Treatment Claim in Count I Should Be Dismissed for Failure to State a Claim ........................................................................................ 7

        A.     Plaintiffs Patterson and McDowney Fail to Allege Sufficient Facts to Establish that They Suffered an Adverse Employment Action. ........................... 8

        B.     Assuming that There Was an Adverse Action, None of the Plaintiffs Allege Facts Establishing a Plausible Causal Connection to Their Sex. .......................... 11

    II.     Plaintiffs' Disparate Impact Claim in Count II Should Be Dismissed for Failure to State a Claim. ................................................................................................... 14

    III.    Plaintiffs' Hostile Work Environment Claim in Count III Should Be Dismissed for Failure to State a Claim ...................................................................................... 17

        A.     Comer Fails to Allege Unwelcome Conduct. ......................................... 18

        B.     All Three Plaintiffs Fail to Allege Differential Treatment Based on Their Sex .... 18

        C.     Plaintiffs Fail to Allege Sufficiently Severe or Pervasive Conduct. ..................... 19

    IV.    Plaintiffs' Equal Protection Claim Under § 1983 in Count IV Should Be Dismissed for Failure to State a Claim. ........................................................................................ 20

        A.     Plaintiffs Do Not Identify a Similarly Situated Comparator. ............................... 21

        B.     No Facts Support an Inference of Discriminatory Animus by Defendants. ......... 22

        C.     VDOC's Full Body Screening Policy Survives Intermediate Scrutiny. ............... 25

    V.     Plaintiffs Are Not Entitled to Prospective Injunctive Relief. ...................................... 27

CONCLUSION .................................................................................................................... 28

CERTIFICATE OF SERVICE .......................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Trs. of the Univ. of N.C.-Wilmington,*
> 640 F.3d 550 (4th Cir. 2011) ........................................................... 7

*Anderson v. Westinghouse Savannah River Co.,*
> 406 F.3d 248 (4th Cir. 2005) ............................................. 15, 16, 17

*Ashcroft v. Iqbal,*
> 556 U.S. 662 (2009) ......................................................................... 7

*Banks v. N.C. Dep't of Corr.,*
> 2006 WL 8438577 (E.D.N.C. Mar. 30, 2006) ............................... 11

*Bell Atl. Corp. v. Twombly,*
> 550 U.S. 544 (2007) ......................................................................... 6

*Bell v. Wolfish,*
> 441 U.S. 520 (1979) ....................................................................... 27

*Bing v. Brivo Sys., LLC,*
> 959 F.3d 605 (4th Cir. 2020) ....................................................... 7, 8

*Bristow v. Daily Press, Inc.,*
> 770 F.2d 1251 (4th Cir. 1985) ......................................................... 9

*Brown v. Hous. Auth.,*
> 2017 WL 3189447  (D. Md. July 26, 2017) ..................................... 8

*Burke v. Clarke,*
> 842 F. App'x 828 (4th Cir. 2021) ................................................. 24

*City of Cleburne v. Cleburne Living Ctr.,*
> 473 U.S. 432 (1985) ................................................................. 22, 25

*City of Los Angeles v. Lyons,*
> 461 U.S. 95 (1983) ......................................................................... 27

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.,*
> 68 F.4th 864 (4th Cir. 2023) ......................................................... 25

*Coleman v. Bobby Dodd Inst.,*
> 2017 WL 2486080 (M.D. Ga. June 8, 2017) ............................ 12, 13

*Coleman v. Md. App. Ct.,*
> 626 F.3d 187 (4th Cir. 2010) ......................................................... 12

*Connecticut v. Teal*,

    457 U.S. 440 (1982) ................................................................. 17

*Cooper v. Smithfield Packing Co.*,

    724 F. App'x 197 (4th Cir. 2018) ................................................ 8

*Craig v. Boren*,

    429 U.S. 190 (1976) ................................................................. 21

*Edwards v. City of Goldsboro*,

    178 F.3d 231 (4th Cir. 1999) ..................................................... 6

*EEOC v. Sunbelt Rentals, Inc.*,

    521 F.3d 306 (4th Cir. 2008) ................................................... 19

*Equity in Athletics, Inc. v. Dep't of Educ.*,

    639 F.3d 91 (4th Cir. 2011) ..................................................... 21

*Flores v. Va. Dep't of Corr.*,

    2021 WL 668802 (W.D. Va. Feb. 22, 2021) ..................... 14, 15, 16

*Forgus v. Mattis*,

    753 F. App'x 150 (4th Cir. 2018) ................................................ 8

*Garrett v. Clarke*,

    74 F.4th 579 (4th Cir. 2023) ............................................... 25, 26

*Holloway v. Maryland*,

    32 F.4th 293 (4th Cir. 2022) .................................................... 17

*Hoyle v. Freightliner, LLC*,

    650 F.3d 321 (4th Cir. 2011) .............................................. 12, 18

*James v. Booz-Allen & Hamilton, Inc.*,

    368 F.3d 371 (4th Cir. 2004) ..................................................... 8

*Kentucky v. Graham*,

    473 U.S. 159 (1985) ................................................................. 20

*Kerr v. Marshall Univ. Bd. of Governors*,

    824 F.3d 62 (4th Cir. 2016) ..................................................... 23

*Long v. 1st Union Corp. of Va.*,

    894 F. Supp. 933 (E.D. Va. 1995) .............................................. 9

*Love-Lane v. Martin*,

    355 F.3d 766 (4th Cir. 2004) .................................................... 20

*McCleary-Evans v. Md. Dep't of Transp.*,

780 F.3d 582 (4th Cir. 2015) ........................................................................ 7

*McDonell v. Hunter,*
809 F.2d 1302 (8th Cir. 1987) ................................................................... 26

*McNair v. Comput. Data Sys., Inc.,*
172 F.3d 863, 1999 WL 30959 (4th Cir. 1999) .................................... 8

*Medeiros v. Wal-Mart, Inc.,*
434 F. Supp. 3d 395 (W.D. Va. 2020) .............................................. 15, 17

*Monegain v. Dep't of Motor Vehicles,*
491 F. Supp. 3d 117 (E.D. Va. 2020) ....................................................... 21

*Morrison v. Garraghty,*
239 F.3d 648 (4th Cir. 2001) .......................................................... 23, 26

*Nordlinger v. Hahn,*
505 U.S. 1 (1992) ....................................................................................... 21

*Ofoche v. Apogee Med. Grp., Va., P.C.,*
815 F. App'x 690 (4th Cir. 2020) .............................................................. 8

*Oncale v. Sundowner Offshore Servs., Inc.,*
523 U.S. 75 (1998) ..................................................................................... 19

*Perkins v. Int'l Paper Co.,*
936 F.3d 196 (4th Cir. 2019) .......................................................... 19, 20

*Pers. Adm'r of Mass. v. Feeney,*
442 U.S. 256 (1979) .......................................................................... 22, 23

*Qaiser v. Small Bus. Admin.,*
2016 WL 8711622 (E.D. Va. Mar. 18, 2016) ....................................... 19

*Sec'y & Law Enf't Emps. v. Carey,*
737 F.2d 187 (2d Cir. 1984) ..................................................................... 26

*Smith v. City of Jackson,*
544 U.S. 228 (2005) ................................................................................... 15

*Sowers v. VVF Ill. Servs., LLC,*
2019 WL 1923407 (N.D. Ill. Apr. 30, 2019) ................................... 10, 11

*Swaso v. Onslow Cnty. Bd. of Educ.,*
698 F. App'x 745 (4th Cir. 2017) ...................................................... 9, 10

*Sylvia Dev. Corp. v. Calvert Cnty.,*
48 F.3d 810 (4th Cir. 1995) ............................................................. 23, 25

v

*Tabb v. Bd. of Educ. of Durham Pub. Sch.*,

    29 F.4th 148 (4th Cir. 2022) ................................................................ 12

*Tang v. E. Va. Med. Sch.*,

    2021 WL 2916714 (E.D. Va. July 12, 2021) ........................................ 9

*Taylor v. Republic Servs., Inc.*,

    968 F. Supp. 2d 768 (E.D. Va. 2013) ................................................ 19

*Turner v. Safley*,

    482 U.S. 78 (1987) .............................................................................. 26

*United States v. Olvis*,

    97 F.3d 739 (4th Cir. 1996) ................................................................ 21

*Valerino v. Holder*,

    2013 WL 12432290 (E.D. Va. Feb. 20, 2013) ................................... 12

*Veney v. Wyche*,

    293 F.3d 726 (4th Cir. 2002) .............................................................. 21

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,

    429 U.S. 252 (1977) ...................................................................... 23, 24

*Washington v. Harper*,

    494 U.S. 210 (1990) ........................................................................ 1, 26

*Wheeler v. Pa. Dep't of Corr.*,

    2009 WL 1653555 (W.D. Pa. June 11, 2009) .................................... 11

*Wright v. Nat'l Archives and Recs. Serv.*,

    609 F.2d 702 (4th Cir. 1979) .............................................................. 17

**Statutes**

42 U.S.C. § 1983 .............................................................................. 6, 20, 27

Title VII of the Civil Rights Act of 1964,

    42 U.S.C. §§ 2000e to 2000e-17 .......................................................... 7

**Other Authorities**

Murry Lee, *Former Corrections Officer Pleads Guilty to Distributing Drugs at Red Onion State Prison*, WHLJ (Mar. 9, 2021, at 1:12 PM), https://www.wjhl.com/news/local/former-corrections-officer-pleads-guilty-to-distributing-drugs-at-red-onion-state-prison/ .................................................................. 26

Neal Parsons et al., *Detecting and Managing Drug Contraband: An Overview of Technologies for Managing Entry of Drug Contraband and Detecting Their Use in Correctional Facilities*, Off. of Just. Programs Nat'l Crim. Just. Reference Serv., Crim. Just. Testing

and          Eval.          Consortium          (Sept.          2021),
https://www.ojp.gov/pdffiles1/nij/grants/302135.pdf. ........................................................ 1

*VADOC Finds Contraband on Female Contractor After Body Scan at Indian Creek
Correctional Center*, Va. Dep't of Corr. (Jan 12, 2024),
https://vadoc.virginia.gov/news-press-releases/2024/vadoc-finds-contraband-on-
female-contractor-after-body-scan-at-indian-creek-correctional-center/ .......................... 25

Defendants Virginia Department of Corrections ("VDOC") and Department Director Chadwick Dotson, by counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), submit the following Memorandum of Law in Support of Their Motion to Dismiss the Complaint of Plaintiffs Mallory Patterson, Emily Comer, and Carla McDowney.

## INTRODUCTION

Three truisms exist when it comes to prisons and contraband. First, "[d]rug use is prolific in the United States' correctional system and increases violent incidences with staff and between inmates, decreases the health and well-being of the incarcerated and staff, and undermines the process of rehabilitation."[1] Second, contraband is commonly smuggled into prisons and jails by inmates, staff, and visitors through methods that are difficult to detect. And third, no one doubts "the legitimacy[] and the necessity" of policies that protect Virginia's "interests in prison safety and security." *Washington v. Harper*, 494 U.S. 210, 223 (1990). To this end, VDOC requires *everyone*—male and female, staff and visitors alike—to process through body scanners at the entrances to certain of its correctional facilities. With respect to employees, if those scanners detect *any* anomaly inside a person's body cavity, VDOC is permitted to ask the employee to consent to a strip search prior to entering the secured facility to ensure that they are not attempting to traffic contraband, such as drugs, weapons, or cellphones, into the prison.

Plaintiffs are former female VDOC employees and contract employees who were strip searched (with their consent), or terminated in lieu of the search, after a body scanner detected an anomaly inside their pelvic region. They allege that the detection of an anomaly was a form of gender discrimination because they were wearing feminine hygiene products or a contraceptive

---

[1] Neal Parsons et al., *Detecting and Managing Drug Contraband: An Overview of Technologies for Managing Entry of Drug Contraband and Detecting Their Use in Correctional Facilities* 1, Off. of Just. Programs Nat'l Crim. Just. Reference Serv., Crim. Just. Testing and Eval. Consortium (Sept. 2021), https://www.ojp.gov/pdffiles1/nij/grants/302135.pdf.

device. As such, they challenge VDOC's screening policy under Title VII of the Civil Rights Act of 1964—alleging discriminatory treatment, discriminatory impact, and hostile work environment—and under the Equal Protection Clause of the U.S. Constitution. All of their claims should be dismissed.

**Count I for disparate treatment fails** because VDOC's gender-neutral policy permits consensual strip searches of *any* employee, regardless of gender, when there is an anomalous body scan. That is exactly what occurred here: Plaintiffs were all searched (or terminated or resigned in lieu of search) following an anomalous body scan. The Complaint does not plausibly allege intentional sex discrimination.

**Count II for disparate impact fails** because Plaintiffs plead no statistical data demonstrating that women are treated less favorably under the facially neutral policy than men. Nor do Plaintiffs sufficiently allege a series of events demonstrating less favorable treatment towards women—instead, they merely allege a few sporadic, distinguishable incidents scattered over the course of three years.

**Count III for hostile work environment fails** because (1) Plaintiff Emily Comer never experienced any unwelcome treatment; (2) none of the Plaintiffs were treated differently because of their sex; and (3) none of their allegations demonstrate sufficiently severe or pervasive conduct that altered the terms and conditions of their employment.

**Count IV alleging an equal protection violation under Section 1993 fails** because (1) Plaintiffs fail to identify a similarly situated comparator—nothing in the Complaint suggests that a male employee would not be strip searched or terminated if he had an anomalous body scan; (2) the Complaint does not and cannot establish VDOC possessed discriminatory animus; and (3) VDOC's body scanner policy serves the Commonwealth's well-established and legitimate interest in protecting the safety of VDOC staff, visitors, and prisoners.

**Plaintiffs are not entitled to prospective injunctive relief** because each no longer works for VDOC, and thus, they cannot allege a real or immediate threat that they will be wronged in the future by VDOC's body scanner policy.

For these reasons, stated in more detail below, the Court should grant Defendants' Motion to Dismiss and dismiss the Complaint with prejudice.

**FACTUAL BACKGROUND[2]**

## I. VDOC's Standard Operating Procedures

VDOC operates "a full-body security X-ray scanning system" at the entrances to certain of its correctional centers throughout the Commonwealth. Compl. ¶ 12. Under its Standard Operating Procedure ("SOP"), which is referenced in and relied on throughout the Complaint, VDOC requires all visitors and employees entering these facilities to pass through body scanners. *Id.* ¶¶ 12, 15. These scanners produce "a skeletal view" of a person's body, which enables the scanners' operators to determine whether a person has "an unknown object or anomaly" inside their body. *Id.* ¶¶ 13, 16. Pursuant to the SOP, with respect to employees, a strip search may be authorized if the images generated by the body scanner indicate that an employee has such an object inside their body. *Id.* ¶ 16. "The SOP defines 'strip search' as a complete visual search of the body that requires a person to remove every article of clothing to permit a visual inspection of the person's breasts, buttocks, and genitalia." *Id.* If an employee refuses to undergo such a search, the SOP permits VDOC to bar the person from the correctional facility or to terminate their employment. *Id.* ¶ 17.

## II. Plaintiffs' Body Scans

The Complaint centers around three incidents in which three women—two VDOC contractor employees and one direct VDOC employee—were either strip searched or terminated from their employment after the body scanners at the facilities where they worked detected anomalous objects inside their bodies. *Id.* ¶¶ 33–80.

### A. Mallory Patterson

Patterson started working as a contract Therapeutic Community Counselor at the Indian Creek Correctional Center ("ICCC") in Chesapeake, Virginia, in June 2021 through a contractor

---

[2] The allegations of the Complaint are set forth herein only for purposes of this Motion to Dismiss.

company, Spectrum Health Systems, Inc. *Id.* ¶¶ 33–34. On November 10, 2021, Patterson passed through the body scanner, but the facility door would not open. *Id.* ¶ 35. A VDOC officer approached her and told her that she needed to go through the scanner again. *Id.* ¶ 36. VDOC Lieutenant "Allen," accompanied by investigator Sergent "P. Allen," then informed Patterson that "her body scan image was flagged as suspicious." *Id.* ¶ 38. Patterson denied having any contraband on her person. *Id.* ¶¶ 38–39. She explained that she was menstruating and wearing a menstrual cup. *Id.* ¶ 39. Sergent Allen replied that he would inform VDOC Major Lassiter. *Id.* Around half an hour later, Major Lassiter confirmed with Patterson that she was wearing a menstrual cup and requested Patterson's consent for a strip search. *Id.* ¶¶ 40–43. Patterson consented. *Id.* Major Lassiter and two other VDOC officers then conducted the strip search of Patterson in a bathroom. *Id.* ¶ 44. The VDOC officers had Patterson remove her clothes and menstrual cup and show them the cup. *Id.* After the search concluded, Patterson placed her menstrual cup in her car, reentered the facility, and passed through the scanner without wearing the cup. *Id.* ¶ 45–46. This time, she cleared the scanner. *Id.* ¶ 46. She then went home for the day. *Id.* ¶ 46. Patterson later "resigned her employment effective in December 2021."[3] *Id.* ¶ 50.

### B. Emily Comer

Comer began working as a Licensed Practical Nurse ("LPN") at the State Farm Correctional Center ("SFCC") in Goochland County, Virginia, in April 2020. *Id.* ¶ 51. Comer was employed at VDOC as a contractor through a third-party company, HealthForce of Virginia, Inc. ("HealthForce"). *Id.* ¶ 52. On April 4, 2022, Comer entered SFCC and went through the body scanner. *Id.* ¶ 54. The VDOC officer operating the scanner stopped her. *Id.* According to the

---

[3] The Complaint does not allege whether Patterson resigned only from working at ICCC, from her employment with Spectrum Health Systems, or from VDOC as a whole.

Complaint, the officer then "asked [Comer] if she was on her period because the officer 'saw something' on her scan." *Id.* Comer responded that she was not menstruating but was wearing an intrauterine device ("IUD") for contraception, as she had done throughout her employment. *Id.* ¶¶ 55, 61. Comer was allowed to proceed to work, and she worked a normal day. *Id.* ¶ 56. The next day, April 5, Comer returned to SFCC for another shift, and she passed through the scanner without incident and worked another normal day. *Id.* ¶ 57. On April 6, Comer had the day off from work. *Id.* ¶ 58. That day, she received a voicemail from "an employee at her staffing company advising that her shift the following day had been cancelled." *Id.* On April 7, Comer's VDOC supervisor informed her that, "at the direction of the Warden of SFCC[,] she was 'not allowed back into the facility due to suspicious body scans.'" *Id.* ¶ 59. Comer confirmed the same with HealthForce. *Id.*[4]

### C. Carla McDowney

McDowney started working as an officer in training at the Haynesville Correctional Center ("HCC") in Richmond County, Virginia, in August 2023. *Id.* ¶ 63. McDowney's training took place in an unsecured area, so she did not pass through the scanner on a typical workday. *Id.* On October 27, 2023, McDowney passed through a body scanner on the way to the secured area of HCC to watch an inmate graduation. *Id.* ¶ 64. After she went through the scanner, the VDOC officer operating the scanner stopped her and had her sit down in a chair for about 20 minutes. *Id.* ¶¶ 65–67. McDowney was informed that the scanner detected an object in her vaginal area. *Id.* ¶ 69. McDowney initially denied having anything in her body in that area, but then remembered that she was wearing a tampon and sanitary pad in her underwear and informed the warden as such. *Id.* The warden then asked McDowney if she would consent to a strip search. *Id.* ¶ 70. McDowney consented, and two VDOC officers accompanied her to the restroom to conduct the search. *Id.*

---

[4] The Complaint does not allege whether Comer remains employed at HealthForce or whether she is permitted to work in other VDOC facilities.

¶¶ 71–72. The officers had McDowney remove her clothing, tampon, and sanitary pad. *Id.* ¶ 72–74. After the search concluded, one of the officers provided McDowney with a new sanitary pad, and McDowney got dressed. *Id.* ¶¶ 75–76. When she returned to the conference room, the warden allowed her to go home for the day. *Id.* ¶ 76. At the time the Complaint was filed, McDowney remained employed at HCC. *Id.* ¶ 80.[5]

## III.    The Complaint

Based on these allegations, Plaintiffs brought this putative class action. In their Complaint, Plaintiffs allege three claims of discrimination on the basis of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a) ("Title VII"): systemic disparate treatment (Count I), disparate impact (Count II), and hostile work environment (Count III). *Id.* ¶¶ 90–115. They also allege a violation of the Equal Protection Clause of the U.S. Constitution under 42 U.S.C. § 1983 against Chadwick Dotson, the current Director of VDOC (Count IV). *Id.* ¶¶ 116–23.

## LEGAL STANDARD

The "purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[, not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a claim will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Thus, to survive a Rule 12(b)(6) motion, a plaintiff must allege facts sufficient to make the claim plausible, rather than speculative. *Id.* at 570. If the application of "judicial experience and common sense" to "the well-pleaded facts do not permit the court to infer

---

[5] McDowney resigned from her position on November 11, 2023, two days after the Complaint was filed.

6

more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (cleaned up).

## ARGUMENT

### I. Plaintiffs' Title VII Disparate Treatment Claim in Count I Should Be Dismissed for Failure to State a Claim.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a). A plaintiff bringing an employment discrimination claim under Title VII must ultimately establish their claim "through one of two methods: (1) direct or circumstantial evidence that discrimination motivated the employer's adverse employment decision, or (2) the *McDonnell Douglas* pretext framework that requires the plaintiff to show that the employer's stated permissible reason for taking adverse employment action is actually a pretext for discrimination." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 n.8 (4th Cir. 2020) (internal quotation marks and citation omitted). To demonstrate a prima facie case of discrimination absent direct evidence of discrimination, a plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) the adverse action that occurred "under circumstances giving rise to an inference of unlawful discrimination." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011).

In the context of a Title VII case, Plaintiffs "need not plead a prima facie case of discrimination" to survive a motion to dismiss. *Bing*, 959 F.3d at 616. But to meet the Federal Rules' pleading requirements, their Complaint must "allege facts to satisfy the elements of a cause of action created by that statute." *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). Moreover, "[a]lthough [a] [p]laintiff is not required to show a prima facie case to

survive a motion to dismiss, the elements of a prima facie claim are helpful in analyzing the plausibility of the claim as alleged." *Brown v. Hous. Auth.*, 2017 WL 3189447, at *5 n.5 (D. Md. July 26, 2017). Accordingly, the inquiry here is whether Plaintiffs allege "facts that plausibly state a violation of Title VII above a speculative level." *Bing*, 959 F.3d at 617. Because Plaintiffs do not, Count I should be dismissed.

### A. Plaintiffs Patterson and McDowney Fail to Allege Sufficient Facts to Establish that They Suffered an Adverse Employment Action.

Among other requirements to state a claim for disparate treatment under Title VII, a plaintiff must "allege facts that [w]ould establish that [s]he suffered an adverse employment action." *Ofoche v. Apogee Med. Grp., Va., P.C.*, 815 F. App'x 690, 692 (4th Cir. 2020) (affirming the district court's dismissal of the plaintiff's claim for disparate treatment because the plaintiff failed to sufficiently allege an adverse employment action). To constitute an adverse employment action in the context of a Title VII disparate treatment claim, "the alleged action must 'adversely affect the terms, conditions, or benefits of the plaintiff's employment.'" *Forgus v. Mattis*, 753 F. App'x 150, 153 (4th Cir. 2018) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) Still, "[n]ot every [action] that displeases the employee constitutes an 'adverse employment action' for the purposes of Title VII." *McNair v. Comput. Data Sys., Inc.*, 172 F.3d 863, 1999 WL 30959, at *3 (4th Cir. 1999) (unpublished table decision). Instead, the Fourth Circuit has repeatedly recognized that the disparate treatment theory of discrimination "focuse[s] on the question of whether there has been discrimination in what could be characterized as *ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating." *Cooper v. Smithfield Packing Co.*, 724 F. App'x 197, 202 (4th Cir. 2018) (emphasis added). Although "[c]onduct short of ultimate employment decisions can constitute adverse employment action," *James*, 368 F.3d at 375–76 (internal quotation marks omitted), "[a]n adverse action is one

that constitutes *a significant change in employment status*, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (emphasis added); *see also Tang v. E. Va. Med. Sch.*, 2021 WL 2916714, at *4 (E.D. Va. July 12, 2021) (discussing the requirements of an adverse employment action and finding that the plaintiff failed to establish that she was subjected to such an action).

Applying this standard to the allegations in the Complaint, Plaintiffs simply do not—and cannot—allege that Patterson and McDowney suffered an adverse employment action. Starting with Patterson, the Complaint expressly alleges that "Patterson felt she could not continue to work in the environment at ICCC due to [the strip search] experience and resigned her employment." Compl. ¶ 50. But there is no allegation that Defendants took any action that could be characterized as an ultimate employment decision. Indeed, the Complaint does not even make clear whether Patterson continues to work for Spectrum or at another correctional center. Nor is there any allegation that Defendants took any action that changed Patterson's employment status in any way. And as for McDowney, the Complaint plainly alleges that she "remains a VDOC employee working at HCC." *Id.* ¶ 80.[6] Here again, there is simply no allegation that Defendants took any action that changed McDowney's employment status in any way. In short, there is no allegation

---

[6] McDowney resigned from her position two days after the Complaint was filed. But even if McDowney had pled that she resigned, she still would have failed to sufficiently allege an adverse employment action. A constructive discharge may constitute an adverse employment action only when a plaintiff shows "that her work conditions were intolerable, and that a deliberate effort was made by the defendant to force her to quit." *Long v. 1st Union Corp. of Va.*, 894 F. Supp. 933, 943 (E.D. Va. 1995) (citing *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)). Here, all that McDowney alleges is that VDOC enforced its gender-neutral policy of conducting searches of employees whose body scans displayed anomalies. Nothing in the Complaint suggests that VDOC intentionally implemented and enforced this policy to target her or other women. As such, had she alleged that she resigned, McDowney still would not have sufficiently pled an adverse employment action.

that Defendants took any action whatsoever regarding Patterson's or McDowney's employment, never mind one that made a *significant* change to their employment status. *See Swaso*, 698 F. App'x at 748.

Given the absence of any allegations regarding an adverse employment action, Plaintiffs appear to rely on the premise that the searches conducted on Patterson and McDowney pursuant to the SOP constitute adverse employment actions. *See id.* ¶ 95. But these searches did not affect Plaintiffs' employment conditions in a manner equivalent to hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a significant change in benefits. And, indeed, a workplace search of an employee or an employee's property "is generally not enough to materially change the terms and conditions of employment." *Sowers v. VVF Ill. Servs., LLC*, 2019 WL 1923407, at *3 (N.D. Ill. Apr. 30, 2019).

For example, in *Sowers*, the plaintiff asserted a disparate treatment claim against his employer, alleging that he suffered an adverse employment action because of the "manner in which [his employer] searched his belongings in public." *Id*. at *2. There, in response to an indication that the plaintiff brought a gun to the manufacturing facility where he worked, the plaintiff's manager "conspicuously" walked the plaintiff across the facility and conducted a search of the plaintiff's personal belongings, which was visible to several other co-workers. *Id*. at *1. The plaintiff alleged that he was "humiliated and embarrassed by the search" and that "he was subjected to humiliating and degrading working conditions" because of the way in which his employer conducted the search. *Id*. at *1–2.

The *Sowers* court found that the alleged search did not rise to the level of an adverse employment action. *Id.* at *3. The court explained that "[e]ven if the search was unjustified," it did not "materially change the terms and conditions of employment." *Id*. at *3. The court reasoned

that, although the plaintiff "[u]nderstandably . . . felt embarrassed by the search," he did "not plausibly allege[] an adverse employment action," and it dismissed the disparate treatment claim. *Id*.

Similarly, in the context of employment at a correctional institution, and consistent with *Sowers*, federal courts have found that subjecting an employee to a search for illegal drugs does not constitute an adverse employment action. *See, e.g.*, *Wheeler v. Pa. Dep't of Corr.*, 2009 WL 1653555, at *7 (W.D. Pa. June 11, 2009); *Banks v. N.C. Dep't of Corr.*, 2006 WL 8438577, at *6 (E.D.N.C. Mar. 30, 2006). In *Wheeler*, the court found that the plaintiff failed to establish an adverse employment action despite the fact that the plaintiff (1) "was subjected to an *unwarranted* pat-down search and a drug residue screening" and (2) "had his vehicle searched by a K-9 dog *in contravention* of [the Pennsylvania Department of Corrections'] policies and procedures." 2009 WL 1653555, at *1, 7 (emphasis added). And in *Banks*, the court determined that a drug search of the plaintiff and the plaintiff's vehicle did not amount to an adverse employment action even though the plaintiff "was subjected to a more extensive search than other officers" on account of his race. 2006 WL 8438577, at *2, 6.

Here, the Complaint is devoid of any allegation suggesting that VDOC affirmatively took any action that constituted a significant change in the employment status of either Patterson or McDowney. The strip searches were conducted pursuant to the SOP, and although they were likely unpleasant and uncomfortable, they do not constitute an adverse employment action as a matter of law. Accordingly, Patterson and McDowney's disparate treatment claims should be dismissed.

**B. Assuming that There Was an Adverse Action, None of the Plaintiffs Allege Facts Establishing a Plausible Causal Connection to Their Sex.**

Even when a plaintiff sufficiently alleges adverse employment action, she still must allege facts establishing a plausible causal connection between the adverse action and her protected

status. *Coleman v. Md. App. Ct.*, 626 F.3d 187, 190–91 (4th Cir. 2010). In other words, a plaintiff must plausibly allege that the adverse action was taken based on, or because of, her protected status. *Id.* "An employee is harassed or otherwise discriminated against 'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011) (quotation omitted); *see also Valerino v. Holder*, 2013 WL 12432290, at *8 (E.D. Va. Feb. 20, 2013) ("[D]isparate treatment provides a ground for gender discrimination only if [the plaintiff's] gender is a factor in the adverse employment action."). Importantly, although the facts alleged in the Complaint must be taken as true at this stage of the proceeding, that test "is not legally myopic" and, instead, "must be applied with common sense" to determine whether the allegations "state a claim to relief *that is plausible on its face*, not merely conceivable." *Tabb v. Bd. of Educ. of Durham Pub. Sch.*, 29 F.4th 148, 155 (4th Cir. 2022).

*Coleman v. Bobby Dodd Institute, Inc.* should guide the Court's decision here. 2017 WL 2486080 (M.D. Ga. June 8, 2017). There, the court found that a female employee was not terminated because of her sex when she soiled company property due to heavy menstruation. *Id.* at *1. The court reasoned that "a non-frivolous argument" could be made that it would violate Title VII for an employer to treat a "uniquely feminine condition, such as excessive menstruation, less favorably than similar conditions affecting both sexes, as incontinence." *Id.* at *2. However, the plaintiff did not make such a comparator argument. *Id.* Instead, she only alleged that "her termination would not have occurred but for a uniquely feminine condition." *Id.* The court rejected this proposition, finding it to be an overbroad interpretation of Title VII. *Id.* The court continued that, even if it accepted the plaintiff's argument, the plaintiff still did not show that she was

terminated because of her sex. *Id.* Rather, the plaintiff was terminated due to her lack of personal hygiene and for soiling company property. *Id.*

Likewise, in this case, Plaintiffs were searched or terminated not because of a condition unique to women, but for an entirely gender-neutral reason: the detection of anomalies on their body scans. *See id.* Patterson and McDowney presumably passed through the scanner while menstruating and wearing feminine hygiene products multiple times throughout their employment without a problem. It was only when anomalies were detected on their scans that they were searched. Likewise, Comer went through the scanner while wearing an IUD for two years before a VDOC officer detected "something" on her scan on April 4, 2022. Compl. ¶ 54. Comer makes the conclusory assumption that she was "terminated because she was a female utilizing a contraceptive device when she arrived to work" that day. *Id.* ¶ 61. But this allegation is devoid of any factual support. All that she alleges is that an officer saw "something" on her scan, and that she was later terminated due to "suspicious body scans." *Id.* ¶¶ 54, 59. Moreover, as in *Coleman*, Plaintiffs do not allege that a male employee would not be subject to a strip search or termination as a result of an anomalous body scan. Their own allegations make clear that the opposite is true, as the SOP "authorize[s]" a strip search *any* time an anomaly or unknown object is detected. *Id.* ¶ 16.[7] Thus, the Complaint does not demonstrate a causal connection between the alleged adverse actions and Plaintiffs' gender. The VDOC's SOP applies equally to all sexes and genders, and Plaintiffs were searched or terminated for a gender-neutral reason under the policy.

---

[7] Additionally, Plaintiffs do not plausibly allege that VDOC's implementation of or reliance on the SOP was a pretext for sex or gender discrimination. As Plaintiffs allege, the SOP applies to all employees. Compl. ¶ 15. As discussed in Section IV.C., *infra*, VDOC has a legitimate and non-discriminatory interest in keeping its prisons safe and free of drugs, weapons, or other contraband that people, even employees, may attempt to traffic in. Simply put, Plaintiffs do not—and cannot—allege that the SOP was merely a pretext designed to effect invidious discrimination against women.

In sum, Plaintiffs' allegations of sex discrimination fail to rise above the speculative level. Plaintiffs do not allege facts establishing that they suffered an adverse action. Further, at most, they have alleged that they suffered adverse actions due to anomalous or "suspicious" body scans—*not* their sex. Plaintiffs fall short of pleading facts that state a plausible claim for disparate treatment and Count I should be dismissed in its entirety.[8]

## II. Plaintiffs' Disparate Impact Claim in Count II Should Be Dismissed for Failure to State a Claim.

Next, Plaintiffs allege that VDOC's SOP, which authorizes consensual strip searches of employees when a body scanner detects an anomaly or unknown object, disparately impacts female VDOC employees because "[a] tampon, menstrual cup, or birth control device utilized by an employee may generate an anomaly or unknown object on a body scan." *Id.* ¶ 103.

---

[8] Plaintiffs attempt to compare this disparate treatment claim to *Flores v. Virginia Department of Corrections*, but their selective reliance on that case is misplaced. *See* Compl. ¶¶ 27–32 (citing 2021 WL 668802 (W.D. Va. Feb. 22, 2021)). In *Flores*, the plaintiff was a dental hygienist at the Augusta Correctional Center ("ACC"). *Flores*, 2021 WL 668802, at *1. In the morning of July 17, 2019, Flores went through the scanner at ACC while wearing a "fully saturated tampon." *Id.* Thereafter, she removed the tampon, placed toilet paper in her underwear as a temporary measure, and passed through the scanner later in the day. *Id.* This prompted VDOC officers to question her about why the images from her first and second scans were different. *Id.* at *2. Flores explained to the officers that she was on her period. *Id.* She voluntarily showed them her menstrual blood, and she also inserted a new tampon and processed through the scanner again to prove her innocence. *Id.* at *2–3. Still, officers continued to question her, and she was later terminated due to "suspicion of contraband." *Id.* Flores then brought Title VII disparate treatment and disparate impact claims against VDOC based on these events. *Id.* at *3. The court denied VDOC's motion to dismiss as to the disparate treatment claim. *Id.* at *6.

Contrary to Plaintiff's assertion, the facts here are clearly distinguishable from those in *Flores*. For one, neither Patterson nor McDowney were terminated, like Flores. Even with respect to Comer's termination, nothing in the Complaint supports her allegation that she was fired specifically because of her IUD. Rather, the Complaint alleges that an officer "saw something" on her scan and that she was dismissed for "suspicious body scans." *Id.* ¶¶ 54, 59. This is a far cry from the events in *Flores*, where Flores was discharged for suspicion of contraband despite her "reasonable explanation for the anomalous images." *Flores*, 2021 WL 668802, at *6.

To state a prima facie case for disparate impact under Title VII, a plaintiff must identify a facially neutral employment practice or policy that has "a significantly discriminatory impact" on a protected class under Title VII. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir. 2005). "[I]t is not enough to simply allege that there is a disparate impact on workers, or [to] point to a generalized policy that leads to such an impact." *Flores v. Va. Dep't of Corr.*, 2021 WL 668802 at *7 (W.D. Va. Feb. 22, 2021) (alterations in original) (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)). Additionally, "a plaintiff must allege either the existence of numerical or statistical evidence demonstrating disparate impact or sufficient factual detail of a series of discrete episodes of the contested employment practice in order to raise a plausible inference that the employment practice has a discriminatory impact on the protected group." *Id.* (internal quotation marks and alterations omitted) (quoting *Medeiros v. Wal-Mart, Inc.*, 434 F. Supp. 3d 395, 416 (W.D. Va. 2020)).

Here, VDOC maintains a facially neutral policy of utilizing body scanners to detect anomalies and, under that policy, VDOC may seek permission to strip search an employee when the scanner detects an anomaly or unknown object. *See* Compl. ¶¶ 12, 16. But Plaintiffs do not allege that this policy impacts women in a *significantly* discriminatory way. *See Anderson*, 406 F.3d at 265. For one, they do not allege any statistical information to support their claim. Nor do they sufficiently allege numerical data or a series of discrete events suggesting a disparate impact. Instead, the Complaint describes just three isolated incidents that took place many months apart: Patterson was searched on November 10, 2021; Comer was searched and terminated in early April 2022; and McDowney was searched on October 27, 2023. Compl. ¶¶ 35, 59, 64. These incidents also occurred under different circumstances. Each Plaintiff worked at a different correctional facility. *Id.* ¶¶ 33, 51, 63. And each one was wearing a different feminine hygiene or contraceptive

device: Patterson was wearing a menstrual cup, Comer utilized an IUD, and McDowney was wearing a tampon and sanitary pad. *Id.* ¶¶ 40, 55, 69.[9] Even construing the facts and inferences in the light most favorable to Plaintiffs, their disparate impact claim fails.

Further, Plaintiffs never allege that a scanner detects an anomaly, and a search ensues, each time—or even the majority of the times—a female employee wearing a feminine hygiene product or contraceptive device passes through the machine. As previously noted, Comer wore an IUD for two years without incident, and Patterson and McDowney likely wore feminine hygiene products through the scanner without being searched multiple times. The three incidents alleged are precisely the kind of sporadic and isolated events that are not actionable under Title VII.

Moreover, Plaintiffs concede that they are just three of VDOC's thousands of regular and contract employees. According to the Complaint, VDOC employs about 14,000 people at its correctional centers. *Id.* ¶ 83. The Complaint alleges that the agency employs 13,000 people directly, of which 46% are female. *Id.* It alleges that VDOC employs approximately another 1,000 correctional center employees as contractors through staffing companies. *Id.* Assuming these allegations as true for purposes of this Motion, and 46% of the contract employees are also female, Plaintiffs comprise less than 0.05% of all female VDOC employees. Thus, it cannot be said that the body-scanner policy has a "*significantly*" disparate impact on female VDOC employees. *Anderson*, 406 F.3d at 265 (emphasis added); *cf. Wright v. Nat'l Archives and Recs. Serv.*, 609 F.2d

---

[9] Plaintiffs also contend that the Court should consider *Flores* as part of the series of events giving rise to their disparate impact claim. Compl. ¶ 106. But *Flores* does not support Plaintiffs' disparate impact claim, as it bears many of the same distinctions as the instances alleged by Plaintiffs. The events alleged by Flores occurred at a different VDOC facility over two years before the first incident alleged in this case. *Flores*, 2021 WL 668802, at *1. *Flores* did not involve a strip search, and unlike the events in this case, it involved a K9 search of the plaintiff's car. *Id.* Given these differences to the facts here, that case does not constitute a discrete event that could be considered as a part of a series in support of Plaintiff's disparate impact claim. Moreover, Flores' disparate impact claim was dismissed pursuant to VDOC's motion to dismiss in that case. *Id.* at *8. The same result likewise is appropriate here.

702, 712–13 (4th Cir. 1979) (holding that plaintiff failed to state disparate impact claim when only three employees could have been disparately impacted by challenged policy); *Medeiros*, 434 F. Supp. at 418–19 (allegation that four women were not promoted based on their sex was not sufficient for disparate impact claim "in the context of [the plaintiffs'] overall allegations"). Plaintiff's disparate impact claim is based entirely on occasional and unconnected events that affected a tiny sliver of the VDOC workforce, and it should be dismissed.[10]

## III.    Plaintiffs' Hostile Work Environment Claim in Count III Should Be Dismissed for Failure to State a Claim.

Plaintiffs allege that VDOC created a hostile work environment in violation of Title VII by "forc[ing] Plaintiffs . . . to submit to a strip search or be terminated from employment because of sex, menstruation, use of feminine hygiene product[s], and/or use of birth control device." Compl. ¶ 111. To state a hostile work environment claim, Plaintiffs must allege that (1) they experienced unwelcome harassment; (2) the harassment was based on their sex; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022) (affirming 12(b)(6) motion to dismiss hostile work environment claim). At this stage, it may be fairly said that the body scans and strip searches are

---

[10] Although a plaintiff need not plead a prima facie case of disparate impact at the pleadings stage, it is worth noting that, if a plaintiff establishes a prima facie case, then "the employer must then demonstrate that any given requirement has a manifest relationship to the employment in question, in order to avoid a finding of discrimination." *Anderson*, 406 F.3d at 265 (internal alterations and quotation marks omitted) (quoting *Connecticut v. Teal*, 457 U.S. 440, 446 (1982)). If the employer satisfies this burden, then a plaintiff may prevail only if she "shows that the employer was using the practice as mere pretext for discrimination." *Id.* (quoting *Teal*, 457 U.S. at 447). Even if Plaintiffs met their burden to show the SOP's significantly discriminatory impact—and they cannot—the policy clearly bears a manifest relationship to employment at VDOC. As discussed in more detail below, *see infra* Section IV.C., combating the risk of contraband flowing into prisons is paramount. And again, Plaintiffs do not and cannot allege that the gender-neutral VDOC SOP is a mere pretext for sex discrimination.

imputable to VDOC. Even so, Comer has not plausibly alleged that she experienced unwelcome harassment, and none of the Plaintiffs can show that they were subjected to a hostile work environment because of their sex or that any of their alleged harassment was sufficiently severe or pervasive.

### A. Comer Fails to Allege Unwelcome Conduct.

As to the first element, VDOC does not dispute that Patterson and McDowney have pled that they experienced "unwelcome conduct" when they were searched. But Comer fails to plead any such conduct. Rather, a VDOC officer merely asked Comer whether she was "on her period" after he "saw something" on the body scan. Compl. ¶ 54. Comer responded that she was not, but she did use an IUD. *Id.* ¶ 55. She then "proceed[ed] to her work area and worked a normal day." *Id.* ¶ 56. The next day, she passed through the scanner with no problem and worked another normal shift. *Id.* ¶ 57. She was then let go from SFCC due to "suspicious body scans." *Id.* ¶ 59. Comer never alleges that she was subject to any hostile or harassing remarks during these experiences, nor does she allege that she experienced any emotional distress while passing through the scanner or during her conversations regarding her employment status. These normal workplace interactions do not and cannot amount to unwelcome conduct for the purpose of Title VII, and Comer's hostile workplace claim must be dismissed.

### B. All Three Plaintiffs Fail to Allege Differential Treatment Based on Their Sex.

Next, even assuming VDOC's conduct was unwelcome to each Plaintiff, the Complaint fails to allege that such conduct was based on their sex, as required by the second element. As explained previously, "[a]n employee is harassed or otherwise discriminated against 'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination." *Hoyle,* 650 F.3d at 331. Put another way, "[t]he sine qua non of a hostile work environment claim is the presence, in the workplace, of [sexually] offensive remarks or other

actions that are, in and of themselves, [sexually] insulting." *Qaiser v. Small Bus. Admin.*, 2016 WL 8711622, at *10 (E.D. Va. Mar. 18, 2016) (citation omitted). As the Complaint itself makes clear, nothing about the SOP or its enforcement is meant to single out or insult female employees based on their gender. Rather, the SOP authorizes VDOC to strip search any employee, regardless of gender, when their scan shows an unknown object or anomaly. Compl. ¶ 16. Plaintiffs were searched or terminated from their facility *not* because of their sex, but because a body scanner detected an unknown or anomalous object. Gender played no part in their experiences.

### C. Plaintiffs Fail to Allege Sufficiently Severe or Pervasive Conduct.

Finally, Plaintiffs do not allege that the purportedly wrongful conduct was severe or pervasive enough to create a hostile work environment. The Fourth Circuit "recognize[s] that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). And, as the Supreme Court has explained, whether harassment qualifies as severe or pervasive depends on "[c]ommon sense, and an appropriate sensitivity to social context." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998). Here, the use of body scans and strip searches makes perfect sense in the correctional context, where safety and security are of the utmost importance. Moreover, the Complaint only alleges three isolated incidents over the course of nearly two years at three different facilities, which falls far short of the lofty "severe or pervasive" standard. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 210 (4th Cir. 2019) (instances of racially offensive conduct that were "remote in time relative to each other and to [the plaintiff's] decision to leave" his employment did not constitute severe or pervasive conduct); *Taylor v. Republic Servs., Inc*., 968 F. Supp. 2d 768, 793 (E.D. Va. 2013) ("[T]hree discrete acts [of sexual harassment] over a three-year period[] do not reach the level of 'severe' or 'pervasive' conduct that is required by the Supreme Court to state a claim for hostile-work-environment discrimination.").

And, importantly, "information about which a plaintiff is unaware cannot, by definition, be part of a plaintiff's work experience." *Perkins*, 936 F.3d at 211. For that reason, "experiences of third parties about which a plaintiff was unaware should not be considered in evaluating a hostile work environment's severe or pervasive requirement." *Id.* at 210. Nothing in the Complaint indicates that Plaintiffs knew each other, were aware of each other's alleged experiences, or were aware of the *Flores* case before this lawsuit. It would make no sense to hold VDOC liable for creating a hostile environment when, in fact, Plaintiffs had no idea about each other or *Flores* until long after their alleged experiences. For these reasons, the hostile work environment claim also fails.

### IV. Plaintiffs' Equal Protection Claim Under § 1983 in Count IV Should Be Dismissed for Failure to State a Claim.

In Count IV, Plaintiffs contend that VDOC's Director, Chadwick Dotson, "has maintained a policy and practice of subjecting female employees and/or contractors to strip searches and/or threats of and actual terminations from employment because they are female, menstruating, using a feminine hygiene product, or using a contraceptive device." Compl. ¶ 119. Based on this, Plaintiffs argue they have been discriminated against because they are women, in violation of the Equal Protection Clause. *Id.* ¶¶ 117, 120–21. Plaintiffs are wrong.[11]

"In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that [s]he was treated differently from others who were

---

[11] Dotson, who is sued in his official capacity as the Director of VDOC, should be dismissed as a matter of law. The Supreme Court has described official-capacity suits as "another way of pleading an action against an entity of which an officer is an agent." *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. Accordingly, the § 1983 claim against Director Dotson in his official capacity is redundant of Plaintiffs' claim against VDOC "and thus should be dismissed as duplicative." *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).

similarly situated *and* that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (emphasis added). If these hurdles are cleared, a plaintiff must also allege facts that show "the disparity in treatment cannot be justified under intermediate scrutiny." *Monegain v. Dep't of Motor Vehicles*, 491 F. Supp. 3d 117, 141 (E.D. Va. 2020); *see also Craig v. Boren*, 429 U.S. 190, 197 (1976) (gender-based classifications subject to intermediate scrutiny).

### A. Plaintiffs Do Not Identify a Similarly Situated Comparator.

With respect to the first element, the failure to identify similarly situated persons dooms an equal protection claim. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated"). And here, Plaintiffs do not plausibly allege that they have been treated differently from those "who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Plaintiffs seem to suggest that their comparators are male employees who have been threatened with termination or subjected to a strip search "due to menstruation[,] utilizing a female hygiene product," or contraception. Compl. ¶¶ 49, 62, 120. But this is an inappropriate comparator, as it does not "isolate the factor allegedly subject to impermissible discrimination." *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).

As a matter of basic biology, there are no biologically male employees who have attempted to enter Virginia prisons menstruating or wearing feminine hygiene products. Instead, the appropriate comparator class is to male prison employees who attempted to enter a Virginia prison and for whom the full-body body scanner detected an anomaly. *This* is the correct comparator because, according to Plaintiffs, (1) VDOC's policy requires *all employees* "entering a correctional center that is equipped with the body scanners to submit themselves to an examination by the body scanners"; (2) "when an unknown object or anomaly is detected during the body scan . . . VDOC

may authorize a strip search"; and (3) those who refuse a search may be barred from the corrections facility and/or terminated from employment. Compl. ¶¶ 14, 16–17.

Properly framed, whether VDOC violated the Equal Protection Clause depends on whether the Department treated women for whom the body scanner detected an anomaly differently from men for whom the same scanner detected an anomaly. To be sure, there are obvious physical differences between women and men, including genitalia, menstruation, and the use of feminine hygiene products. But VDOC's policy is designed with one gender-neutral purpose in mind—to prevent the trafficking of illegal contraband into the Commonwealth's prisons. Men, just like women, have an orifice within which to smuggle contraband (their anus). If a male employee was permitted to enter a prison (or was not strip searched) despite the body scanner showing an anomaly in the male employee's nether region, then Plaintiffs might be able to show differential treatment between similarly situated employees. That's because the Equal Protection Clause guarantees that "all persons *similarly situated* should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (emphasis added). But that is *not* what the Complaint alleges. Plaintiffs seek to compare apples to oranges (female employees who menstruate or use feminine hygiene products versus men who do not), not apples to apples (female employees who register an anomaly and suffer an adverse employment action versus male employees who are found with an anomaly and suffer no such adverse action). The Fourteenth Amendment provides for "equal laws," but it does not guarantee "equal results." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273 (1979). Absent an allegation that Plaintiffs were treated differently from similarly situated male employees, Count IV fails.

**B. No Facts Support an Inference of Discriminatory Animus by Defendants.**

With respect to the second element, Plaintiffs must establish more than differential treatment alone—a discriminatory intent or purpose is required to state a plausible equal protection

claim. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977); *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). In this context, "discriminatory intent 'implies more than intent as volition or intent as awareness of consequences.'" *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 819 n.2 (4th Cir. 1995) (quoting *Feeney*, 442 U.S. at 279).[12] Plaintiffs must show that VDOC "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* (cleaned up). This Plaintiffs cannot do.

Even assuming some unequal treatment occurred (there was none), the Complaint fails to allege facts sufficient to show that such unequal treatment was the result of VDOC's intentional or purposeful discrimination. Indeed, the Fourth Circuit has held that mere knowledge of a person's sexual orientation and forcing a resignation are not enough to state a plausible equal protection claim. *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 81 (4th Cir. 2016) (affirming district court's dismissal of equal protection claim when there was "no allegation of overt discriminatory animus," and plaintiff only alleged that defendants "had knowledge of [the plaintiff's] sexual orientation"). To start, VDOC's policy is gender neutral—there is no allegation

---

[12] In *Feeney*, the Supreme Court rejected a gender discrimination challenge to Massachusetts' civil service hiring preference for qualified veterans—a policy that operated disproportionately to the benefit of men—holding that, despite the State's general knowledge that veterans were overwhelmingly male at the time of the policy's approval (indeed, "over 98% male"), mere "awareness of consequences" was not sufficient for proving a discriminatory purpose. 442 U.S. at 270, 279. The statute's adverse impact on women seeking civil service positions was, at most, a secondary impact of the State's legitimate and gender-neutral aim to assist veterans in securing employment. *Id.* 279–80. The plaintiffs in *Feeney* thus failed to prove that the statute was enacted "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon" women in the Massachusetts workforce. *Id.* at 279. The same result applies with respect to VDOC's gender-neutral scanning policy. The Complaint simply does not, and cannot, allege that VDOC specifically intended to target female employees/contractors and to inflict adverse effects upon that group.

that the policy is intentionally directed at or designed for female employees. Further, Plaintiffs cannot establish animus by claiming that VDOC's facially neutral policy disparately impacts women (which, as discussed above, it does not). *See Arlington Heights*, 429 U.S. at 264–65 ("[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact."). Stated differently, merely alleging that different persons are treated differently is not enough to show a violation of the Equal Protection Clause.

Just as importantly, none of the allegations in the Complaint suggest that VDOC acted with the intent to discriminate against Plaintiffs because they are women, menstruating, or using feminine hygiene products or contraception. *See Burke v. Clarke*, 842 F. App'x 828, 838 (4th Cir. 2021) (affirming the dismissal of an equal protection claim where the plaintiff's allegations failed to establish that VDOC applied a policy with discriminatory intent against Rastafarians). There are no allegations that VDOC has, for example, a history of invidious decision-making with respect to female employees traversing the body scanner, that VDOC has departed from normal screening procedures at prisons, or that VDOC has made contemporaneous statements revealing a discriminatory motive.[13]

Simply put, the Complaint does not sufficiently allege animus because it does not raise the plausible inference that an "invidious discriminatory purpose was a motivating factor" in the implementation of VDOC's body scanning policy. *Arlington Heights*, 429 U.S. at 266. Absolutely nothing suggests VDOC created or implemented its body scanning policy "*because of . . . its*

---

[13] In their Complaint, Plaintiffs point to a long-suspended memorandum issued by the VDOC Chief of Corrections Operations that prohibited offender visitors from wearing tampons or menstrual cups into its facilities. Compl. ¶ 18. That policy was implemented in September 2018 and withdrawn shortly thereafter. *Id.* ¶¶ 18, 22. According to Plaintiffs, that policy apparently evinces discriminatory animus towards women. But that policy is irrelevant. For one, it was withdrawn over two years before the first incident alleged in the Complaint. Additionally, it only applied to visitors at VDOC facilities, not employees or contractors like Plaintiffs.

adverse effects upon" female employees. *Sylvia Dev. Corp.*, 48 F.3d at 819 n.2 (emphasis added) (internal quotation marks omitted); *see also Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 879 (4th Cir. 2023) (plaintiffs' equal protection claim failed because "the Coalition fail[ed] to identify any evidence suggesting that the Board adopted the [race-neutral admissions] policy 'at least in part because of' some calculated adverse effect on Asian American students—that is, the Coalition ma[de] no showing of discriminatory intent by the Board"), *cert. denied,* 2024 WL 674659 (U.S. Feb. 20, 2024).

### C. VDOC's Full Body Screening Policy Survives Intermediate Scrutiny.

Finally, even if Plaintiffs had pled sufficient facts to plausibly demonstrate that they were treated differently from other similarly situated VDOC male employees *and* that this unequal treatment resulted from intentional discrimination (they have not), this differential treatment clears intermediate scrutiny by a mile. That's because VDOC's policy is "substantially related to a sufficiently important governmental interest." *City of Cleburne*, 473 U.S. at 441. "Drugs are the single greatest problem in many penal institutions today," and Virginia is no exception. *Garrett v. Clarke*, 74 F.4th 579, 590 (4th Cir. 2023) (Wilkinson, J., concurring). The risk of contraband flowing into prisons is therefore self-evident, and so is the unfortunate truth that illegal material is sometimes smuggled in by a prison's own employees. Indeed, "employees are not exempt from the payoffs and blackmail that are often part and parcel of a prison drug trade." *Id.*

For example, on January 3, 2024, a female employee attempted to smuggle tobacco into the Indian Creek Correctional Center (the same prison where Plaintiff Patterson worked) by secreting it in her groin area. *See VADOC Finds Contraband on Female Contractor After Body Scan at Indian Creek Correctional Center*, Va. Dep't of Corr. (Jan 12, 2024), https://vadoc.virginia.gov/news-press-releases/2024/vadoc-finds-contraband-on-female-contractor-after-body-scan-at-indian-creek-correctional-center/. And in 2021, a former Red Onion

prison guard pled guilty to distributing tobacco, marijuana, buprenorphine, suboxone, MDMA, and heroin to inmates. *See* Murry Lee, *Former Corrections Officer Pleads Guilty to Distributing Drugs at Red Onion State Prison*, WHLJ (Mar. 9, 2021, at 1:12 PM), https://www.wjhl.com/news/local/former-corrections-officer-pleads-guilty-to-distributing-drugs-at-red-onion-state-prison/. These are just two public examples resulting from a straightforward internet search. There are surely more. It should go without saying that Virginia has an important interest in keeping its prisons safe and free of drugs, weapons, or other contraband that people, even employees, may attempt to sneak in. *See Washington*, 494 U.S. at 223 ("The legitimacy, and the necessity, of considering the State's interests in prison safety and security are well established by our cases.").[14] VDOC's body scanner policy is designed to further that important interest.

It must also be noted that, in the "highly regulated" corrections industry, prison employees have diminished expectations of privacy. *Garrett*, 74 F.4th at 585; *see also McDonell v. Hunter*, 809 F.2d 1302, 1306 (8th Cir. 1987) ("[B]ased on [correctional officers'] place of employment, their subjective expectations of privacy are diminished while they are in the confines of the prison."); *Sec'y & Law Enf't Emps. v. Carey*, 737 F.2d 187, 202 (2d Cir. 1984) ("[S]ociety[] is prepared to recognize as reasonable the proposition that correction officers have diminished expectations of privacy in light of the difficult burdens of maintaining safety, order and security

---

[14] The Fourth Circuit has recognized that, "[w]ithout question, prison safety and security is a legitimate, indeed compelling, penological interest." *Morrison*, 239 F.3d at 660. "Such matters of security are precisely the type of day-to-day considerations that require prison authorities to take actions which call for the *lesser standard of scrutiny* applicable to regulations and policies implemented in the prison environment." *Id.* (emphasis added) (citing *Turner v. Safley*, 482 U.S. 78, 89–90 (1987)). In *Morrison*, for example, the Fourth Circuit held that an inmate's equal protection rights were violated when a prison policy prohibited consideration of the inmate's request to obtain Native American religious items because he was not of Native American heritage. *Id.* at 651. Here, because Plaintiffs allege gender discrimination, VDOC has analyzed (without conceding) their equal protection claims under the higher standard of intermediate scrutiny, rather than lower standard of rational basis scrutiny.

that our society imposes on those who staff our prisons."). VDOC's body scanning policy is no secret; employees are made aware of the policy when hired and are reminded of it throughout their employment. Plaintiffs' diminished expectation of privacy must be balanced against VDOC's need to prevent contraband from entering its prisons.

It is indisputable that VDOC uses body scanners to reduce the risk of contraband being trafficked into the Commonwealth's prisons. And this policy deserves "wide-ranging deference." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (according "wide-ranging deference" to prison administrators "in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). Accordingly, VDOC's gender-neutral policy of using body scanners to detect and prevent the introduction of illegal items into its prisons is substantially related to an important governmental interest.

## V. Plaintiffs Are Not Entitled to Prospective Injunctive Relief.

Finally, Plaintiffs request prospective "injunctive relief to secure changes in VDOC's policies and practices regarding body scans, strip searches, threatened termination from employment and actual termination from employment." Compl. ¶ 88; *see also id.* at 22 ¶ B. But injunctive relief is unavailable to § 1983 plaintiffs "absent a showing of . . . any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Here, Patterson and Comer lack standing to seek prospective injunctive relief because they are no longer employed by VDOC. Compl. ¶ 50 (Patterson resigned because of her experience), ¶ 61 (Comer contending she was fired because she used contraception).[15] Because there is no real

---

[15] As noted above, McDowney resigned from her position two days after the Complaint was filed, thus disqualifying her from prospective injunctive relief as well.

or immediate threat that Plaintiffs will be wronged again by VDOC's allegedly unlawful policy, neither may seek prospective injunctive relief in this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant its Motion and dismiss the Complaint with prejudice, and award Defendants such other and further relief as the Court deems appropriate.

Dated: February 23, 2024

Respectfully submitted,

**VIRGINIA DEPARTMENT OF CORRECTIONS AND CHADWICK DOTSON**

By: _/s/ Laura D. Windsor_
Laura D. Windsor
Virginia State Bar No. 70354
Counsel for Defendants
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6466
Facsimile: (804) 420-6507
lwindsor@williamsmullen.com

Brendan D. O'Toole
Virginia State Bar No. 71329
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6588
Facsimile: (804) 420-6507
botoole@williamsmullen.com

Hannah R. Gourdie
Virginia State Bar No. 96994
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6020
Facsimile: (804) 420-6507
hgourdie@williamsmullen.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 23rd day of February 2024, I electronically filed the foregoing

Memorandum in Support with the Clerk of Court using the CM/ECF system, which will send a

notification of such filing (NEF) to the following:

        Harris D. Butler, III
        Paul M. Falabella
        Samantha Galina
        Butler Curwood, PLC
        140 Virginia Street, Suite 302
        Richmond, Virginia 23219
        harris@butlercurwood.com
        paul@butlercurwood.com
        samantha@butlercurwood.com

By:   */s/ Laura D. Windsor*
        Laura D. Windsor
        Virginia State Bar No. 70354
        Counsel for Defendants
        WILLIAMS MULLEN
        200 South 10th Street, Suite 1600
        Richmond, Virginia 23219
        Telephone: (804) 420-6466
        Facsimile: (804) 420-6507
        lwindsor@williamsmullen.com